IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>TIMOTHY JAY VAFEADES,<br><br>                              Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION IN LIMINE TO EXCLUDE 404(B) AND 413 EVIDENCE OF DEFENDANT'S PRIOR CRIMES, WRONGS, OR ACTS**<br><br>Case No. 2:14-cr-00153-DN<br>District Judge David Nuffer |

On March 26, 2014, Timothy Jay Vafeades was indicted on two counts of kidnapping[1] and two counts of Transportation for Illegal Sexual Activity[2] related to two victims ("Victim A" and "Victim B"), as well as Transportation of Child Pornography[3] and Possession of Child Pornography[4] related to child pornography found on his external hard drives. On November 10, 2014, the government gave notice of its intent to introduce evidence of Mr. Vafeades's alleged kidnapping and sexual assault of four other women ("Victim C," "Victim D," "Victim E," and "Victim F").[5]

Nearly a year later, Mr. Vafeades filed what he titled a response[6] to the Government's Notice of Intent. In that filing, Mr. Vafeades referred to the Government's Notice of Intent as "[t]he Government's motion,"[7] although the government made no motion regarding this

---

[1] 18 U.S.C. § 1201.

[2] *Id.* § 2421.

[3] *Id.* § 2252A(a)(1).

[4] *Id.* § 2252A(a)(5)(B).

[5] United States' Notice of Intent to Introduce Evidence Pursuant to Rules 404(b) and 413 ("Government's Notice of Intent"), docket no. 45, filed Nov. 10, 2014.

[6] Defendant's Response to United States' Notice of Intent to Introduce Evidence Pursuant to Rules 404(b) and 413 (the "Motion in Limine"), docket no. 100, filed Oct. 22, 2015.

[7] *Id.* at 1.

evidence, and then Mr. Vafeades subsequently referred to his own filing as a "motion."[8] His filing seeks exclusion of "all evidence of alleged prior bad acts,"[9] and therefore, it is construed as a motion *in limine*.[10]

On November 12, 2015, the government filed what it titled as a reply,[11] but for the purposes of this Motion in Limine, it will be construed as the opposition brief. With the filing of Government's Opposition, the government also provided the court with transcripts and recordings of the victims' interviews.[12] On November 19, 2015, Mr. Vafeades filed what he titled a response to the government's reply,[13] but for the purposes of this Motion in Limine it will be construed as the reply brief.

After review of the briefs and evidence submitted by the parties and for the reasons stated below, a hearing is unnecessary, and the Motion in Limine is DENIED.

---

[8] *Id.* at 2.

[9] *Id.* at 6.

[10] Black's Law Dictionary defines a motion to suppress as "[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial;" (MOTION TO SUPPRESS, Black's Law Dictionary (10th ed. 2014)) while it defines a motion in limine as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial" (MOTION IN LIMINE, Black's Law Dictionary (10th ed. 2014)). *See United States v. Acox*, 595 F.3d 729, 732–33 (7th Cir. 2010) ("The term 'motion to suppress' covers efforts to invoke the exclusionary rule, or the Miranda doctrine, or the many other constitutional and statutory rules that keep probative evidence out of the trial record. . . . The exclusionary rule covers 'fruit of the poisonous tree' and so deals with testimony about, or derived from, unlawfully seized evidence. . . . Although the Rules of Criminal Procedure do not define 'motion to suppress', the phrase may be given meaning by thinking about what it is not: a motion under a Rule of Evidence. . . . A request for a decision under the Rules of Evidence may be made before trial (lawyers often call these 'motions in limine'). . . . Objections outside the Rules of Evidence properly may be called 'motions to suppress'."). *See also United States v. Perez-Gomez*, No. 3:13CR288-MHT, 2014 WL 6687586, at *4 n.2 (M.D. Ala. Nov. 26, 2014) (construing a motion to dismiss as a pretrial evidentiary motion to exclude evidence, describing the constitutional-evidentiary distinction between motions to suppress and motions *in limine*).

[11] United States' Reply to Defendant's Response to Notice of Intent to Introduce Evidence Pursuant to Fed. R. Evid. 404(b) and 413 ("Government's Opposition"), docket no. 104, filed Nov. 12, 2015.

[12] *See* Sealed Entry-Document filed by USA as to Timothy Jay Vafeades (filing consists of 9 separate disks not uploaded to docket due to file size and/or formatting), docket no. 109, filed Nov. 12, 2015; Transcript of Victim C Interview, bates numbers 1563–95; Transcript of Victim D's Interview, bates numbers 2798–2847; Transcript of Victim E's Interview, bates numbers 1839–58; and Transcript of Victim F's Interview, bates numbers 1474–1516.

[13] Defendant's Limited Response to United States' Reply to Notice of Intent to Introduce Evidence Pursuant to Fed. R. Evid. 404(b) and 413 ("Vafeades's Reply"), docket no. 105, filed Nov. 19, 2015.

## TABLE OF CONTENTS

Factual Background ................................................................................................................. 3

Analysis.................................................................................................................................. 6

    I.    An Evidentiary or Motion Hearing Is Unnecessary.................................................. 6

    II.   Testimonies of Victims C, D, E, and F Are Admissible Under Rule 413 ............. 9

        A.    A Jury Could Reasonably Find that the Prior Sexual Assaults Occurred. 10

        B.    Three Threshold Requirements to Admitting 413 Evidence Are Met ...... 10

            (1)    Mr. Vafeades is Accused of Sexual Assault within Rule 413. ..... 11

            (2)    The Evidence Proffered is Evidence of Mr. Vafeades's
                 Commission of the Sexual Assaults of Victims C, D, E, and F.... 19

            (3)    The Evidence of the Sexual Assaults of Victims C, D, E, and F is
                 Relevant ................................................................................. 20

        C.    Rule 403 Balancing Test.................................................................. 21

    III.  Testimonies of Victims C and D Are Also Admissible Under Rule 404(b)......... 25

    IV.  Conclusion ........................................................................................................ 29

ORDER ................................................................................................................................ 29

## FACTUAL BACKGROUND

The Motion in Limine adopted the statement of facts set forth in the Government's

Notice of Intent "[f]or the limited purpose of this motion," stating that "[t]his motion is based on

the assumption that the Government will be able to prove the following facts, although they are

disputed by Mr. Vafeades."[14] Therefore, the following factual background is an excerpted from

the Government's Notice of Intent.[15] Because the facts are based on direct interviews with the

proposed trial witnesses, they are excellent indicators of direct testimony at trial. Mr. Vafeades

offers no contradictory facts but only seeks the opportunity to cross-examine.[16] As stated by the

government, these facts are "not an exhaustive summary of every detail relayed by each victim;

rather, [they are] a summary of relevant facts necessary to support the [Government's Notice of

Intent]."[17]

---

[14] Motion in Limine at 2 (citing Government's Notice of Intent).

[15] Government's Notice of Intent at 2–5.

[16] Vafeades's Reply at 5.

[17] *Id.* at 2 n.1.

On March 26, 2014, the defendant was indicted on two counts of kidnaping, two counts of Transportation for Illegal Sexual Activity, Transportation of Child Pornography, and Possession of Child Pornography for the kidnaping, assault, and sexual abuse of Victims A and B, as well as his possession of child pornography found on his external hard drives. During the course of the investigation, agents located a female referred to here as Victim C.[18] Victim C met the defendant in or around February 2008 while the defendant was a patient at a hospice facility; they were married two months later. After they were married, Victim C agreed to travel to Utah with the defendant, who arranged to return to work at James H. Clark & Son in Salt Lake City, Utah. Shortly after Victim C and the defendant left for Utah, the defendant began assaulting Victim C on a daily basis, and Victim C eventually joined the defendant on his truck. The defendant took all forms of Victim C's identification; cut and dyed Victim 's C's hair; forced her to shower with him; sexually assaulted her; forced her to sleep naked; refused to allow her to look at other people; used a dremel to file her teeth down; and hit her with a belt. After about six months with the defendant, Victim C escaped while the truck was stopped in California.

Agents also located a female referred to here as Victim D, who met the defendant sometime in 2000 or 2001 while she was working at a retail store.[19] The defendant and Victim D became friends and lost touch for a period of time. The defendant reinitiated contact with Victim D sometime in 2005. In or around June 2005, Victim D met the defendant in Illinois and joined him on his truck for what she believed would be a week and a half. Victim D explained that the defendant changed when she joined him on the truck. Initially the defendant started calling her names; about three days later, he started to beat her on a daily basis. Among other things, the defendant also controlled her diet; refused to allow her to look at other people; used a dremel to file down her teeth; forced her to sleep naked; sexually assaulted her; forced her to take showers with him; forced her to dye her hair; took her driver's license, social security card, and birth certificate; refused to allow her to use a cell phone; hit her with a belt; and threatened her family. Victim D escaped after about two and a half to three months on the road with the defendant.

Like Victims C and D, Victims A and B suffered similar abuse at the defendant's hands. Victim A arrived in Salt Lake City on May 17, 2013, to start working for the defendant on his semi-tractor trailer. Although Victim A asked to leave, the defendant prevented her from leaving by threatening and assaulting her. The defendant traveled the country with Victim A for approximately six months. During that time, the defendant repeatedly physically and sexually assaulted

---

[18] The government provided a transcript of Victim C's interview to defense counsel as discovery, bates numbers 1563–95.  The government provided the court with a copy of the transcript and a recording of the interview when it submitted Government's Opposition on Nov. 12, 2015.

[19] The government provided a transcript of Victim D's interview to defense counsel as discovery, bates numbers 2798–2847. The government provided the court with a copy of the transcript and a recording of the interview when it submitted Government's Opposition on Nov. 12, 2015.

Victim A; beat her on her buttocks; refused to allow her to make eye contact with anyone; took all forms of her identification; used a dremel to file her teeth; forced her to shower with him; forced her to sleep naked; choked her; and forced her to cut her hair the way he wanted it.

Similarly, the defendant lured Victim B into joining him on his truck, and then prevented Victim B from leaving by threatening and assaulting her. From in or around April 2012 through on or about July 12, 2012, while traveling across the United States, the defendant repeatedly physically and sexually assaulted Victim B; beat her on her buttocks with a belt; forced her to sleep naked; used a dremel to file down her teeth; took all forms of her identification; refused to allow her to make eye contact with other people; strangled her until she nearly passed out; took her cell phone away; cut and dyed her hair; and forced her to shower with him. Like Victims C and D, Victim B married the defendant after only knowing him for a relatively short time.

Two other victims, referred to here as Victim E and Victim F were also subjected to the same type of abuse as Victims A, B, C, and D, but more specifically, the defendant also sexually abused Victim E and Victim F on a nearly daily basis.[20] Victim E met the defendant around the fall of 1994, when the defendant befriended and later started dating Victim E while they were taking classes at a local college. According to Victim E, the defendant sexually assaulted her the first time she went to his home. When Victim E lived with the defendant, the defendant sexually assaulted her every day.

Victim F met the defendant online sometime in 1998, shortly after she moved to the United States. The defendant befriended Victim F and sent her gifts over a period of several months, eventually convincing her to visit him in Florida. Just as the defendant did with Victim E, he sexually assaulted Victim F the first night she stayed with him. After the defendant married Victim F, he sexually assaulted her on a daily basis. Finally, like Victims A, B, C, and D, the defendant began sexually abusing Victims E and F once he had exercised some type of control over them, whether it be by marriage or by inducing them to join him on his truck.[21]

---

[20] The government provided transcripts of the interviews of Victims E and F to defense counsel as discovery, bates numbers 1839–58 and 1474–1516, respectively. The government provided the court with copies of the transcripts and recordings of the interviews when it submitted Government's Opposition on Nov. 12, 2015.

[21] Government's Notice of Intent at 2–5.

# ANALYSIS

## I.   An Evidentiary or Motion Hearing Is Unnecessary

In addition to excluding the testimony of Victims C, D, E, and F, Mr. Vafeades's Motion in Limine requests "[a]s an alternative, an evidentiary hearing and subsequent briefing [to] allow both Mr. Vafeades and the Government to better articulate their respective positions."[22]

In his reply brief, Mr. Vafeades makes several arguments to support his request for a hearing. First, Mr. Vafeades argues that a hearing is required.[23] Federal Rule of Evidence 104(c) states that "[t]he court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires."[24] The rule refers to "any" hearing that might be held but does not require a hearing. The rule is conditional, applying only if "justice so requires." And Rule 104 focuses on whether conditions precedent to admissibility are met, not whether evidence should be excluded.[25] Rule 104 is intended to separate the jury from discussions of preliminary matters, an entirely separate context from this instance where Mr. Vafeades seeks a ruling on a motion *in limine*. Rule 104(c) does not require a hearing for this motion *in limine*.

Second, Mr. Vafeades argues that Victims C, D, E, and F should be required to testify:

> Without requiring testimony from the alleged Victim's [sic] C through F, this Court is unable to make a determination of relevance, nor undergo the required balancing test of whether the evidence is more prejudicial than probative. Critical to that inquiry and ensuring due process is the opportunity for cross-examination of the witnesses [sic] credibility, which cannot be fully explored solely based upon prior FBI interviews that have been submitted by the Government."[26]

A determination of relevance would not be aided by requiring the victims to offer live testimony. When the relevance of evidence depends on whether a fact exists, Rule 104(b) requires proof to

---

[22] Motion in Limine at 6.

[23] Vafeades's Reply at 5.

[24] FED. R. EVID. 104(c), 103(c)(3).

[25] *See* FED. R. EVID. 104(a) advisory committee's note to 1972 amendment.

[26] Vafeades's Reply at 5–6.

be introduced to support a finding that the fact does exist.[27] But in this case, at least for the purposes of the Motion in Limine, the first hand interviews of the victims is offered. And Mr. Vafeades has adopted the facts alleged in the Government's Notice of Intent,[28] so the existence of those facts is not at issue in determining relevance. Furthermore, Rule 401 defines relevance without any express or implied reference to additional fact-finding or an evidentiary hearing: "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[29]

Similarly, the required balancing test Mr. Vafeades references does not require a hearing. Although this balancing test is discussed in the Analysis below,[30] the only that factor that *could* be aided by a hearing in this case is how clearly the prior act has been proved. However, district courts are only required to "make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred."[31] Based on the substance of the interviews of Victims C, D, E, and F, and the undisputed facts which Mr. Vafeades has adopted "[f]or the limited purpose of this motion,"[32] a jury could reasonably find that those acts occurred by a preponderance of the evidence. That finding makes irrelevant a hearing where the victims testify live. Because Mr. Vafeades has not articulated any cognizable due process right to cross-examine witnesses in a pre-trial context of a motion *in limine*, his second argument for a hearing fails.

Third, Mr. Vafeades argues that the local rules require a hearing:

---

[27] FED. R. EVID. 104(b).

[28] Motion in Limine at 2 (citing Government's Notice of Intent).

[29] FED. R. EVID. 401.

[30] *See* Part II(C), *infra*.

[31] *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998).

[32] Motion in Limine at 2 (citing Government's Notice of Intent).

> Designed to work in concert with the federal rules, DUCrimR 12-1(d) establishes that attorneys for either the government or the "defense may request oral argument in their initial motion *or at any other time*." Mr. Vafeades requested oral argument in his [Motion in Limine]. The hearing cannot be obviated without violating the basic tenets of Due Process the local rules so clearly honor."[33]

The rule allows a request but does not require a hearing. Mr. Vafeades cites the United States Supreme Court case of *Goldberg v. Kelly*[34] for the proposition that "[t]he fundamental requisite of due process of laws is the opportunity to be heard."[35] However, the issue before the *Goldberg* Court was the constitutional adequacy of administrative notice and hearing procedures in connection with the termination of financial aid under federally-assisted and state relief programs. Motions *in limine* are customarily resolved without hearings, and the *Goldberg* holding about administrative procedure does not bind Article III courts to hold hearings in all circumstances.

Although Mr. Vafeades only included the qualifying language of DUCrimR 12-1(d) in a footnote, the rule states that "the court will grant" a request for a hearing "for good cause shown."[36] Mr. Vafeades states that this standard "is a relatively low bar,"[37] but as stated in the case Mr. Vafeades cites, good cause is defined as "[a] legally sufficient reason."[38] However, Mr. Vafeades has presented no legally sufficient reason to doubt the accuracy of the statements or to require these victims to testify to assess their credibility, particularly where he has adopted the

---

[33] Vafeades's Reply at 6 (citing DUCrimR 12-1(d).

[34] 397 U.S. 254 (1970).

[35] Vafeades's Reply at 6 (citing *Goldberg*, 397 U.S. at 267).

[36] DUCrimR 12-1(d).

[37] Vafeades's Reply at 6 (citing *Holgers v. South Salt Lake City*, 2011 WL 2533019, *2 (D.Utah June 24, 2011).

[38] *Holgers*, 2011 WL 2533019, *2 (citing Black's Law Dictionary 213 (7th ed.1999)).

summary of facts distilled from their interviews "[f]or the limited purpose of this motion."[39] Therefore, neither an evidentiary nor motion hearing is necessary.

Mr. Vafeades also requested "subsequent briefing [to] allow both Mr. Vafeades and the Government to better articulate their respective positions,"[40] the parties have already made four filings on these issues, far more briefing than would normally be allowed on a motion *in limine*. Thus far, Mr. Vafeades has provided 13 total pages of briefing while the government, including its recitation of the facts, has provided 23 total pages of briefing.Additional briefing would not provide any additional assistance in resolving this Motion in Limine.

## II.    Testimony of Victims C, D, E, and F Is Admissible Under Rule 413

The government gave notice of its intent to offer evidence under Federal Rule of Evidence 413 of Mr. Vafeades's sexual assault of Victims C, D, E, and F "to show a pattern of sexual abuse the defendant engaged in once his victims were on his truck with him and / or married to him."[41] Rule 413 provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."[42] The Tenth Circuit has held that "courts are to liberally admit evidence of prior uncharged sex offenses."[43] Rule 413 defines "sexual assault" as

> a crime under federal law . . . involving:
> (1) any conduct prohibited by 18 U.S.C. chapter 109A;
> (2) contact, without consent, between any part of the defendant's body – or an
>      object – and another person's genitals or anus;

---

[39] Motion in Limine at 2 (citing Government's Notice of Intent).

[40] *Id.* at 6.

[41] Government's Notice of Intent at 7.

[42] FED. R. EVID. 413(a).

[43] *U.S. v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007).

(3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;

(4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or

(5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)–(4).[44]

## A.  A Jury Could Reasonably Find that the Prior Sexual Assaults Occurred

Before admitting evidence of a prior sexual assault, the Tenth Circuit has consistently required that "[t]he district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred."[45] As stated above, the interviews of Victims C, D, E, and F, are sufficient for a jury to reasonably find by a preponderance of the evidence that Mr. Vafeades committed those sexual assaults. And Mr. Vafeades adopted, "[f]or the limited purpose of this motion,"[46] the undisputed set of facts which stated that he committed those prior sexual assaults.

## B.  Three Threshold Requirements to Admitting 413 Evidence Are Met

To admit evidence of a prior sexual assault under Rule 413, the Tenth Circuit has articulated three threshold requirements.[47] "The district court must determine (1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant."[48] The Motion in Limine is based solely on the arguments that "the defendant must be charged with an offense of sexual assault"[49] and that

---

[44] FED. R. EVID. 413(d).

[45] *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (10th Cir. Mar. 25, 1998) (citing D. Karp, Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi.–Kent L. Rev. 15, 19 (1994) (opinion clarified, No. 96-2285, 1998 WL 133994) (cert. denied, 525 U.S. 887 (1998)).

[46] Motion in Limine at 2 (citing Government's Notice of Intent).

[47] *See U.S. v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998).

[48] *Benally*, 500 F.3d at 1090.

[49] Motion in Limine at 2–3 (citations omitted).

"Mr. Vafeades has not been charged with the offense of sexual assault."[50] However, Mr. Vafeades's Reply at least mentions an argument related to each of the three threshold requirements.[51]

> *(1)    Mr. Vafeades is Accused of Sexual Assault within Rule 413.*

The first threshold requirement for admitting Rule 413 evidence is that "the defendant is accused of a crime involving sexual assault or child molestation."[52] Mr. Vafeades argued that he "has not been charged with the offense of sexual assault" because the government has charged him with "kidnapping," "prostitution" (Mr. Vafeades's characterization of a violation of the Mann Act, transportation for illegal sexual activity), and "possession and transportation of child pornography," and "[n]one of the crimes charged are crimes of sexual assault."[53]

Mr. Vafeades argues that definitions of the word "accuse" in the 1990 Black's Law Dictionary and the 1986 Webster's Third New International Dictionary[54] mean he must be specifically charged with the crime of sexual assault for Rule 413 to apply. His argument does not extend outside his dictionary research into binding case law or even into subsections of Rule 413 other than subsection (a). And the cases cited by Mr. Vafeades do not support his argument: the unpublished Fourth Circuit *per curiam* decision in *U.S. v. Stamper*[55] clearly lays out the three threshold requirements, including the first that the "defendant must be accused of an offense of sexual assault or child molestation," without further discussion of anything related to the creative distinction Mr. Vafeades attempts to draw between the words "accused" and "charged" or his

---

[50] *Id.* at 3.

[51] Vafeades's Reply at 4–5.

[52] *Benally*, 500 F.3d at 1090. *Compare Seeley v. Chase*, 443 F.3d 1290, 1294 (10th Cir. 2006) ("Evidence of prior sexual assaults may be admitted under Rule 413 if (1) the defendant is on trial for a sexual assault offense . . .")

[53] Motion in Limine at 3.

[54] *Id.* at 3 n.5.

[55] 106 Fed. App'x 833 (4th Cir. 2004).

suggested specificity requirement.[56] Furthermore, although Mr. Vafeades focused on the meaning of the word "accused," he failed to address the more important and relevant definition actually provided in Rule 413(d) which states that a sexual assault is any crime "*involving*"[57] nonconsensual contact "between any party of the defendant's body – or an object – and another person's genitals or anus"[58] or "between the defendant's genitals or anus and any part of another person's body;"[59] or even "an attempt or conspiracy to engage in [such] conduct."[60] Based on the undisputed facts, the charged crimes *involve* these categories of nonconsensual sexual contact.

In multiple cases, the Tenth Circuit has specifically addressed the argument that charges, like those with which Mr. Vafeades is accused and charged, constitute charges of sexual assault, thereby satisfying the first threshold requirement of Rule 413. First, in *U.S. v. Batton*,[61] the defendant was charged under the Mann Act with transporting a minor with the intent to engage in illicit sexual activity.[62] The defendant moved to exclude evidence of a prior sexual assault because § 2423 does not have sexual assault as an element, but the Tenth Circuit rejected that argument, focusing on the *conduct* rather than the elements of the charged offense:

> "Batton is *charged with knowingly transporting [the victim] across state lines with the intent of engaging in illicit sexual activity. The illicit sexual activities involving genital conduct*, which [the victim] testified took place in Chicago, clearly fit the conduct described in § 2243(a), qualifying the activity as a sexual assault pursuant to Rule 413. *See* FED.R.EVID. [sic] 413(d)(1). Moreover, *the charged sexual activity also meets Rule 413's internal definition of sexual assault*, which is "contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person." *See* FED.R.EVID. 413(d)(2).

---

[56] *Id.* at 835.

[57] FED R. EVID. 413(d) (emphasis added).

[58] FED R. EVID. 413(d)(2).

[59] FED R. EVID. 413(d)(3).

[60] FED R. EVID. 413(d)(5).

[61] 602 F.3d 1191 (10th Cir. 2010).

[62] 18 U.S.C. § 2423.

> . . . .
> . . . Rule 413(d)(5) provides that sexual assault includes not only the conduct
> described above but also "any conspiracy to engage in [such] conduct."
> Defendants need not, therefore, complete sexual acts before their conduct
> constitutes a sexual assault for Rule 413 purposes.[63]

Therefore, although the defendant in *Batton* was charged, like Mr. Vafeades, with transportation for illegal sexual activity,[64] the Tenth Circuit considered whether that intended illegal sexual activity, completed or not, constituted a sexual assault under Rule 413. The Tenth Circuit did not simply stop, as Mr. Vafeades would, at whether transportation itself constituted sexual assault, ignoring the underlying illegal sexual activity.

Mr. Vafeades attempts to distinguish *Batton* from the present case by focusing on portions of the Illinois Code and the *Batton* indictment, although the *Batton* court never mentioned the Illinois Code, and only referred to the indictment was in a citation of jury instructions which did not factor into the 413 analysis. Vafeades argues:

> [Batton] had been charged with transporting a minor in interstate commerce with
> the intent of engaging in illegal sexual activity that would constitute a criminal
> offense under Illinois Code Annotated 720 ILSC 5/12-16, conduct which violates
> 18 U.S.C. § 2423. By the plain language of the indictment, to sustain a conviction
> against Mr. Batton, the government had to prove conduct that amounted to sexual
> assault as defined by Rule 413(d).

> In contrast, Mr. Vafeades has been charged with transportation in interstate
> commerce to engage in "*any* sexual activity for which any person can be charged
> with a criminal offense" in violation of 18 U.S.C. § 2421. The indictment does not
> allege Mr. Vafeades engaged in conduct amounting to sexual assault as defined
> by FRE 413. Rather, the indictment leaves open the range of conduct that could
> be used to sustain a conviction against Mr. Vafeades.[65]

---

[63] *Batton*, 602 F.3d at 1197.

[64] The substantive distinction between Mr. Vafeades's present charges under the Mann Act and those in *Batton* is the element that the victim was a minor, otherwise the charges are identical. *Compare* 18 U.S.C. 2421 (Mr. Vafeades's charged violation) *with* 18 U.S.C. 2423 (the charges in *Batton*).

[65] Vafeades's Reply at 2–3 (emphasis in original).

Beyond the lack of any reference in the Tenth Circuit opinion to the Illinois Code, Mr. Vafeades's focus on the indictment is misplaced. First, the Tenth Circuit did not consider whether the illegal conduct underlying the transportation charge was included in the indictment or whether the government had to prove that the illegal conduct took place. Second, aside from the victim's testimony that the conduct took place, [66] the court noted that because an attempt or conspiracy to engage in sexual activity is included in Rule 413's definition of sexual assault, "[d]efendants need not . . . complete sexual acts before their conduct constitutes a sexual assault for Rule 413 purposes."[67] Therefore, as is evident in the language of Rule 413(d)(5), *Batton* does not require that the government must prove the occurrence of the sexual conduct to admit the evidence under Rule 413 because the mere attempt or conspiracy is sufficient.

Third, Mr. Vafeades argued that the indictment does not allege conduct amounting to sexual assault as defined by Rule 413; rather, it charges him with transportation to "engage in '*any* sexual activity for which any person can be charged with a criminal offense.'"[68] He states in a footnote that "[t]o prove a violation of the Mann Act, the government is required to prove "any sexual activity" that is criminal. The government *is not* required to prove sexual assault to sustain a conviction under the Mann Act."[69] Mr. Vafeades does not clearly articulate a conclusion to his argument, but he states that "[i]n short, the indictment does not accuse Mr. Vafeades of sexual assault. Likewise, the government need not prove conduct amounting to sexual assault (as defined by F.R.E. 413) to sustain a conviction under 18 U.S.C. § 2421."[70]

---

[66] *Batton*, 602 F.3d at 1197.

[67] *Id.*

[68] Vafeades's Reply at 2–3 (emphasis in original).

[69] *Id.* at 3 n. 12 (*citing United States v. Hitt*, 473 F.3d 146, 152 (5th Cir. 2007).

[70] *Id.* at 3.

Presumably Mr. Vafeades's position is that because the scope of the sexual activity in the indictment is broad ("*any* sexual activity"), it could refer to activity that would not constitute sexual assault as defined under Rule 413, and therefore, somehow, evidence under Rule 413 is inadmissible even when the charged Mann Act violation is actually based on sexual activity that would constitute sexual assault as defined under Rule 413. However, the *Batton* court did not consider what the indictment said about the sexual conduct underlying the Mann Act charge, nor did the Tenth Circuit require that the sexual conduct underlying the Mann Act charge be proved in order to admit the evidence of prior sexual assault. Although the scope of sexual activity described in the indictment may be broader than the definition of sexual assault in Rule 413, that broader scope has no effect where the interviews and undisputed facts clearly place this case within the Rule 413 definition.

Other circuits are in step with the Tenth Circuit on this issue. First, in *U.S. v. Foley*,[71] the defendant was charged with production, distribution, and possession of child pornography, and as in *Batton*, transportation of a minor for the purposes of engaging in illicit sexual conduct under 18 U.S.C. § 2423 (the same charge as in this case with the exception of the element that the victim was a minor). The defendant argued that Rule 413 did not apply because his § 2423 charge did not constitute a charge of sexual assault. The Seventh Circuit affirmed the district court's finding that the defendant's *conduct* was prohibited under the sexual assault statutes of chapter 109A, and therefore, his *conduct* satisfied one of the definitions of sexual assault under Rule 413(d). The Seventh Circuit stated that

> The focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered

---

[71] 740 F.3d 1079 (7th Cir. 2014).

conduct, but the focus is on the conduct itself rather than how the charges have been drafted.[72]

Second, in *U.S. v. Blazek*,[73] the defendant was charged with attempted enticement of a minor for sex; two child pornography offenses; and similar to *Batton* and *Foley*, travel in interstate commerce to engage in illegal sexual activity with a minor under 18 U.S.C. § 2423(b). The charges in *Batton* and *Foley* fell under § 2423(a), a charge for transportation nearly identical to Mr. Vafeades's charge under § 2421(a), while the *Blazek* charge under § 2423(b) focuses on travel, not transportation, and omits the scienter requirement regarding the victim's status as a minor. As in *Batton*, *Foley*, and in this case, Mr. Blazek argued that Rule 413 did not apply because he was not charged with sexual assault. The Eighth Circuit rejected that argument, stating that "Rule 413 does not require that the defendant be charged with a chapter 109A offense, only that the instant offense involve *conduct* proscribed by Chapter 109A, and the charged "conduct is proscribed by chapter 109A."[74] Although the Eighth Circuit's ruling was based on Rule 413(d)(1), providing that sexual assault means any conduct involving sexual abuse ("conduct prohibited by 18 U.S.C. chapter 109A"), it also supports *Batton* and *Foley* in holding that Rule 413 focuses on the *conduct* involved in the charges not the manner in which the chargers were formally drafted.

Surprisingly, Mr. Vafeades attempts to dismiss these cases as "immaterial" in a single footnote.[75] His entire treatment of these case states:

> In *United States v. Blazek*, 431F.3d 1104, 1109 (8th Cir. 2005), the defendant had been charged with violating 18 U.S.C. § 2423(b), requiring the government to prove "sexual act [sic] with a person who has attained the age of 12 but has not attained the age of 16 years." In *United States v. Foley*, 740 F.3d 1079, 1085–86

---

[72] *Foley*, 740 F.3d at 1087.

[73] 431 F.3d 1104 (8th Cir. 2005).

[74] *Blazek*, 431 F.3d 1109 (emphasis added).

[75] Vafeades's Reply at 3 n.10.

(7th Cir. 2014), the defendant was also charged with, amongst other things, violating § 2423. The Eighth [sic] Circuit noted that criminal conduct prohibited by Chapter 110 also involves conduct criminalized by Chapter 109A. Accordingly the Court found Rule 413 sanctioned the use of prior bad acts in trial. By definition, the conduct proscribed by § 2423 is also proscribed by Chapter 109A. These cases bear no similarity to how the government chose to prosecute Mr. Vafeades.[76]

First, Mr. Vafeades incorrectly stated the nature of § 2423(b). Unlike Mr. Vafeades's claim that the government was required to prove a sexual act with a minor, § 2423(b) penalizes interstate travel "*for the purpose* of engaging in any illicit sexual conduct with another person,"[77] but there is no requirement that the conduct be proven, or even take place. Furthermore, Mr. Vafeades does not articulate how his misstatement of the statute, even if correct, is relevant.

Second, the *Foley* court's notation that Chapter 110 (Sexual Abuse and Other Exploitation of Children) also involves conduct criminalized by Chapter 109A is irrelevant because the court stated that Mr. Foley's production of child pornography (criminalized under chapter 110) "involved his molestation of Minor Male A on several occasions."[78] Even if Rule 413 did not expressly include Chapter 109A in its definition of sexual assault, molestation of a minor would still fall within the nonconsensual sexual contact provisions of Rule 413(d)(2)–(3).

In short, although Mr. Vafeades states that "[t]hese cases bear no similarity to how the government chose to prosecute Mr. Vafeades,"[79] the only true distinction is that Mr. Vafeades has not been charged with assaulting minors, but adults. Although Mr. Vafeades's case may not be exactly identical because his conduct is not criminalized by § 2243 (under Chapter 109A) for sexual abuse of a minor, the foundational principle from *Batton*, *Foley*, and *Blazek* still applies: it

---

[76] *Id.*

[77] 18 U.S.C. § 2423(b).

[78] *Foley* 740 F.3d at 1087.

[79] Vafeades's Reply at 3 n. 10.

is not the formally drafted charge but the underlying *conduct* that determinates whether a defendant has been charged with sexual assault as defined by Rule 413.

Rule 413(d) expressly states that a sexual assault is any crime "*involving*"[80] a violation of Chapter 109A;[81] nonconsensual contact "between any party of the defendant's body – or an object – and another person's genitals or anus"[82] or "between the defendant's genitals or anus and any part of another person's body;"[83] or even "an attempt or conspiracy to engage in [such] conduct. . . ."[84]

As stated above,[85] the victim interviews and undisputed set of facts "[f]or the limited purpose of this motion"[86] clearly place Mr. Vafeades's conduct within the scope of Rule 413. According to the undisputed facts, Mr. Vafeades prevented Victim A from leaving his truck by threatening and assaulting her, repeatedly physically and sexually assaulted her, forced her to shower with him, and forced her to sleep naked with him. Similarly, Mr. Vafeades prevented Victim B from leaving his truck by threatening and assaulting her, repeatedly physically and sexually assaulted her, beat her on her buttocks with a belt, forced her to sleep naked, and forced her to shower with him. Not only does Chapter 109A prohibit causing another person to engage in a sexual act by use of force or threat of serious bodily injury or *kidnapping*,[87] the undisputed rape, sodomy, and object rape clearly falls within multiple express definitions of sexual assault in Rule 413(d) that do not involve consideration of any other statutory offenses.

---

[80] FED R. EVID. 413(d) (emphasis added).

[81] FED R. EVID. 413(d)(1).

[82] FED R. EVID. 413(d)(2).

[83] FED R. EVID. 413(d)(3).

[84] FED R. EVID. 413(d)(5).

[85] *See* Factual Background, *supra* at 3–4.

[86] Motion in Limine at 2 (citing Government's Notice of Intent).

[87] 18 U.S.C. § 2241(a).

Therefore, for multiple reasons, the first threshold requirement for the admission of Rule 413 evidence has been met: Mr. Vafeades is accused of sexual assault.

      *(2)     The Evidence Proffered is Evidence of Mr. Vafeades's Commission of the Sexual Assaults of Victims C, D, E, and F.*

Although the Motion in Limine is based solely on the first threshold requirement, Mr. Vafeades's Reply at least mentions an argument related to the second threshold requirement that the proffered evidence must be evidence of his commission of the prior sexual assaults.[88] Mr. Vafeades's argument on this requirement, in total, is that "the prior acts the government wishes to admit are not evidence of Mr. Vafeades' [sic] commission of another offense of sexual assault. Inducing a willingness to get married is not sexual assault."[89]

Again, as stated above,[90] the parties have presented an undisputed set of facts "[f]or the limited purpose of this motion."[91] Those facts, and the interviews on which they are based, clearly show that the testimony of Victims C, D, E, and F is evidence of their many sexual assaults. For example, after Mr. Vafeades and Victim C were married and shortly after they left for Utah, Mr. Vafeades began assaulting Victim C on a daily basis, forced her to shower with him, sexually assaulted her, forced her to sleep naked, and hit her with a belt. After about three days on Mr. Vafeades's truck, he started to beat Victim D on a daily basis, forced her to sleep naked, sexually assaulted her, forced her to take showers with him, and hit her with a belt. Mr. Vafeades befriended and later started dating Victim E, sexually assaulted her the first time she went to his home, and sexually assaulted her every day when she lived with him. Mr. Vafeades befriended Victim F and sent her gifts over a period of several months, then sexually

---

[88] Vafeades's Reply at 4.

[89] *Id.* (citing Government's Opposition at 12).

[90] *See* Factual Background, *supra* at 3–4.

[91] Motion in Limine at 2 (citing Government's Notice of Intent).

assaulted her the first night she stayed with him, and sexually assaulted her on a daily basis after she married him.

Mr. Vafeades does not identify which of these facts he believes constitute "[i]nducing a willingness to get married,"[92] but the victims' accounts of these assaults are clearly evidence of those assaults. To state that these facts do not constitute sexual assault[93] mischaracterizes and disregards this evidence. The second threshold requirement for admitting Rule 413 evidence is met: the testimony of Victims C, D, E, and F is evidence of Mr. Vafeades's commission of their sexual assaults.

(3)     *The Evidence of the Sexual Assaults of Victims C, D, E, and F is Relevant*

Although the Motion in Limine is based solely on the first threshold requirement, Mr. Vafeades's Reply also offers a minimal argument related to the third threshold requirement that the evidence of the prior sexual assaults must be relevant.[94] Mr. Vafeades states that "[t]he testimony the government wishes to admit is not relevant. The testimony does not make any fact of consequence more or less probable than it would be without the evidence."[95] However, Mr. Vafeades does not develop his relevance argue further than these conclusory statements. Rather, he reverts back to arguing the first threshold requirement, discussing plain language interpretation of Rule 413 and stating that "Mr. Vafeades simply was not charged, was not accused, of sexual assault."[96] This argument has been rejected above,[97] and has no bearing on the third threshold requirement of relevance.

---

[92] Vafeades's Reply at 4 (citing Government's Opposition at 12).

[93] *Id.*

[94] *Id.* at 4–5.

[95] *Id.* at 5.

[96] *Id.*

Although Mr. Vafeades's conclusory argument fails to substantively challenge the relevance of the proffered evidence, it is worth noting that the purpose of Rule 413 emphasizes the relevance of this testimony. As noted by the Tenth Circuit in *Batton*, "Congress enacted [Rules 413 and 414] because these types of cases often raise questions regarding the victim's credibility and a defendant's prior conduct can be especially probative. Additionally, the rules are 'based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes.'"[98] Likewise, the evidence offered by the government is evidence of other sexual assaults varying in degrees of identity with the alleged crimes for which Mr. Vafeades is charged. This evidence is highly relevant to prove Mr. Vafeades's propensity to commit like crimes, fulfilling the core purpose of Rule 413.

**C.  The Rule 403 Balancing Test Does Not Require Exclusion**

The analysis of the admissibility of the testimony of Victims C, D, E, and F does not end with the three threshold requirements under Rule 413; rather, courts are required to apply Rule 403's probative-prejudicial balancing test.[99] Rule 403 provides that "court[s] may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[100] "Courts must make a reasoned, recorded statement of its 403 decision when it admits evidence under Rules 413–415."[101] A conclusory

---

[97] *See* Part II(B)(1) *supra.*

[98] *Batton* 602 F.3d at 1196 (citing *Enjady*, 134 F.3d at 1431).

[99] *Id.* at 1198 (citing *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998)).

[100] FED. R. EVID. 403 (emphasis added).

[101] *Seeley v. Chase*, 443 F.3d 1290 at 1295 (10th Cir. 2006) (citing *United States v. Guardia*, 135 F.3d 1326, 13362 (10th Cir. 1998)).

statement regarding the outcome of this balancing test is insufficient; rather, the Tenth Circuit

"require[s] an on the record decision by the court explaining its reasoning in detail."[102]

The Tenth Circuit has provided a robust framework of factors to consider under this

balancing test for Rule 413 evidence:

> In general, the district court must consider "1) how clearly the prior act has been
> proved; 2) how probative the evidence is of the material fact it is admitted to
> prove; 3) how seriously disputed the material fact is; and 4) whether the
> government can avail itself of any less prejudicial evidence."[103]

> More specifically, in assessing the *probative value* of the evidence, the court must
> consider "(1) the similarity of the prior acts and the charged acts, (2) the time
> lapse between the other acts and the charged acts, (3) the frequency of the prior
> acts, (4) the occurrence of intervening events, and (5) the need for evidence
> beyond the defendant's and alleged victim's testimony."[104] The court assess the
> *prejudicial dangers* by considering "1) how likely is it such evidence will
> contribute to an improperly-based jury verdict; 2) the extent to which such
> evidence will distract the jury from the central issues of the trial; and 3) how time
> consuming it will be to prove the prior conduct."[105]

The government has sufficiently demonstrated the prior acts can be proved for the

purposes of the balancing test. Although Mr. Vafeades was not convicted of the prior acts, as

stated above,[106] a jury could reasonably find that the prior sexual assaults occurred by a

preponderance of the evidence based on the substance of and close similarities between the

interviews of Victims C, D, E, and F. Although Mr. Vafeades has stated an intent to dispute these

prior acts before the jury,[107] he has presented no contrary facts or identified any possible source

of contradictory facts. Also, Mr. Vafeades has adopted the undisputed facts "[f]or the limited

---

[102] *Castillo*, 140 F.3d at 884 (citing *United States v. Roberts*, 88 F.3d 872, 882 (10th Cir. 1996)).

[103] *Batton*, 602 F.3d at 1198 (citing *Enjady*, 134 F.3d at 1433).

[104] *Id.* (citing *Benally*, 500 F.3d at 1190–91).

[105] *Id.* (citing *Enjady*, 134 F.3d at 1433).

[106] *See* Part I, *supra.*

[107] *Id.* at 2.

purpose of this motion,"[108] so the facts are also sufficiently proved at this time. This evidence is also highly probative: as stated above,[109] it is evidence of other sexual assaults varying in degrees of identity with the alleged crimes for which Mr. Vafeades is charged, and it is highly probative of Mr. Vafeades's propensity to commit like crimes. Finally, the government cannot avail itself of any less prejudicial evidence.[110] The government stated that "[a]side from the testimony of Victims A and B, the government has no other less prejudicial evidence than the testimony of Victims C through F."[111]

   More specifically related to the probative value of the evidence, the prior acts are strikingly similar if not largely identical to the charged acts, depending on the victim. For example, according to the undisputed facts, like the kidnappings and assaults of Victims A and B for which Mr. Vafeades is charged, prior assault Victims C and D were also lured onto Mr. Vafeades's truck and held there as he traveled the country. Mr. Vafeades physically and sexually assaulted Victims C and D on a daily basis, and he "repeatedly" physically and sexually assaulted Victims A and B. Mr. Vafeades beat all four victims with a belt, Victims A and B being specifically beaten "on [their] buttocks." Similarly, Mr. Vafeades forced all four of Victims A, B, C, and D to shower with him, forced them to sleep naked, prohibited them from making eye contact with other people, used a dremel to file down their teeth, forced them to cut and / or dye their hair the way he wanted it, and took all forms of their identification and cell phones. Like Victims C and D, Victim B married Mr. Vafeades after knowing him for only a short time. The parallels are not as identical with Victims E and F, yet striking similarities

---

[108] Motion in Limine at 2 (citing Government's Notice of Intent).

[109] *See* Part II(B)(3), *supra*.

[110] *Batton*, 602 F.3d at 1198 (citing *Enjady*, 134 F.3d at 1433).

[111] Government's Opposition at 9.

remain. Although they did not join Mr. Vafeades on his truck, as did Victims A, B, C, and D, Mr. Vafeades sexually assaulted Victims E and F on a daily basis after some kind of control was asserted (either living together with Victim E or marrying Victim F).

Additionally, the time elapsed between the prior acts and the charged acts supports rather than diminishes the probative value of the proffered evidence. Victim E met Mr. Vafeades in the fall of 1994, while Victim F met him in 1998 and was persuaded to travel to be with him in Florida within a matter of months. Victim D met Mr. Vafeades only a few years later in 2000 or 2001, they reconnected in 2005, and she joined him on his truck in June of that year for what she thought would be a week and a half, finally escaping two and a half to three months later. Victim C then met Mr. Vafeades in or around February 2008, they married two months later, and she finally escaped from his truck after about six months. Mr. Vafeades lured Victim B onto his truck in or around April 2012, and she finally escaped on or about July 12, 2012. Finally, Victim A arrived in Salt Lake City and was first sexually assaulted on May 17, 2013, and her abuse lasted for approximately six months. Although the timelines of these six victims span more than 20 years, they are spaced at somewhat regular intervals for similar durations with no record of material intervening events, and "the similarities between the victims and the conduct in each of the cases is striking–they fully support a pattern"[112] of control and physical and sexual assault. The need for evidence beyond the testimony of Mr. Vafeades and Victims A and B[113] is great because this pattern of control and assault is so striking.

More specifically related to the potential for prejudice, which clearly exists where four victims of prior sexual assault may testify, it is unlikely this evidence will contribute to an improperly-based jury verdict because any prejudice "can be addressed in an instruction

---

[112] *Batton*, 602 F.3d at 1198.

[113] *Id.* (citing *Benally*, 500 F.3d at 1190–91).

cautioning the jury that (1) the defendant is not on trial for any conduct not charged in the indictment; and (2) evidence of prior conduct by itself is not sufficient to prove the defendant guilty of the crimes with which he is charged."[114] Furthermore, as the government has stated, "[t]his evidence will not distract from the jury's determination of the defendant's guilt relating to Victims A and B because the testimony of the other four victims will be brief."[115] In this case, rather than distract from core issues, the evidence directly supports a pattern and a propensity for the very crimes charged.

Although there is a potential for prejudice based on the content of the evidence the government intends to offer, it is not undue prejudice that *substantially outweighs* the probative value of the evidence given the apparent pattern of controlling, physical and sexual assault. Therefore, the relevant testimony of Victims C, D, E, and F will not be excluded under Rule 403, and therefore, having met the three threshold requirements under Rule 413 above,[116] this testimony is admissible.

### III.  Testimony of Victims C and D Is Also Admissible Under Rule 404(b)

Although the testimony of Victims C and D is admissible under Rule 413, the government also offered Rule 404(b) as a basis for the admissibility of this testimony. Rule 404(b) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[117] However, "[t]his evidence may be admissible for another purpose, such as

---

[114] Government's Opposition at 9.

[115] *Id.* at 8–9.

[116] *See* Part II(B), *supra*.

[117] FED. R. EVID. 404(b)(1).

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[118]

The Tenth Circuit requires consideration of four factors to determine "the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests."[119] In this case, the probative value of the intended testimony has already been considered, and the defendant has not yet requested a limiting instruction, although the government does not oppose the use of limiting instructions.[120] Therefore, the only remaining 404(b) factors to consider are whether the evidence is offered for a proper purpose and relevance, which was already discussed relative to Rule 413, but it bears reconsideration here.

The Government's Notice of Intent stated its "proper purpose" under Rule 404(b) to offer the testimony of Victims C and D is "to show that the defendant's intent in kidnapping his victims was to sexually and physically assault them while he traveled cross country with them."[121] In arguing this evidence lacks a proper purpose, Mr. Vafeades's Motion in Limine only attacks its admissibility on the issue of intent, arguing that the law is unclear as to "whether kidnapping is a specific intent or general intent crime," and that "[p]rior bad acts cannot be admitted to prove intent where defendant was charged with a general intent crime."[122] In

---

[118] FED. R. EVID. 404(b)(2).

[119] *U.S. v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (citations omitted).

[120] *See* Government's Notice of Intent at 6; *see also* Government's Opposition at 13.

[121] Government's Notice of Intent at 5.

[122] Motion in Limine at 5 (citing *United States v. Jackson*, 248 F.3d 1028, 1031 (10th Cir. 2001) ("kidnapping statute requires only general intent"); *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987)).

response, the government expanded several proper purposes for which the testimony of Victims C and D would be offered under rule 404(b):

> to show (1) how the defendant lures them onto his truck (common scheme or plan); (2) why the defendant lure them onto his truck (motive); (3) what the defendant intended to do once he lured them onto his truck (intent); and (4) that they did not consent to having sex with the defendant while they were being held against their will (absence of mistake or accident).[123]

In his reply, Mr. Vafeades made no further mention of the proper purpose factor or of Rule 404(b).

Even if Mr. Vafeades is correct regarding general intent and kidnapping, (and it is not clear that his argument has merit[124]–for example, 18 U.S.C. § 2421 specifically includes the intent to engage in illicit sexual activity), he has failed to address the government's proffer of multiple other proper purposes. As established above,[125] the testimony of Victims C and D is strikingly similar if not identical to the testimony of Victims A and B, falling squarely within the preparation and plan purposes of Rule 404(b). Therefore, the testimony of Victims C and D is offered for a proper purpose under Rule 404(b).

Challenging relevance under Rule 404(b), Mr. Vafeades argued that "There must be a logical connection between the evidence and the case being tried . . . [but] [t]he Government cannot articulate 'precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.'"[126] In its opposition, the government addressed relevance:

> This evidence is relevant because the similar accounts of Victims A, B, C and D make the fact that the defendant lured Victims A and B onto his truck with the intent to physically, sexually, and psychologically abuse them, and that he used

---

[123] Government's Opposition at 12.

[124] *See Id.* at 9–11.

[125] *See* Part II(C), *supra.*

[126] Motion in Limine at 5 (citing *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985)).

the same general modus operandi to get them there more probable than without evidence from Victims C and D.

Evidence relating to Victims C and D is also relevant to rebut any argument that Victims A and B consented to having sex with the defendant once they were on his truck, or that they consented to being on the truck after the defendant began abusing them. Additionally, testimony from Victims C and D is relevant to demonstrate that the defendant used a nearly identical pattern with each of his victims; that is, courting them with gifts and showering them with compliments, then inducing them to marry him and / or join him on his truck to work for him so he could repeatedly physically and sexually assault them. This evidence also shows why the defendant lured Victims A and B onto his truck – to assert control over them and to repeatedly physically, sexually, and psychologically abuse them, just as he did to Victims C and D.[127]

. . . The testimony of Victims C and D is particularly significant because the defendant may argue that Victims A and B accompanied the defendant in public places and therefore could have, but did not, ask for help or run away. The fact that Victims C and D also stayed with the defendant when he meted out daily physical, sexual and psychological abuse on both of them will help explain why Victims A and B could not escape until law enforcement became involved.[128]

In his reply, Mr. Vafeades only referenced relevance under Rule 413,[129] omitting any argument related to Rule 404(b). As discussed above,[130] his arguments are unpersuasive, and they are especially inapplicable to the Rule 404(b) issue he raised in the Motion in Limine. As the government stated,[131] several consequential facts can be inferred from the testimony of Victims C and D, including Mr. Vafeades's modus operandi, his intent to engage in illicit sexual activity, and lack of consent. Therefore, the testimony of Victims C and D is relevant under Rule 404(b).

In sum, Victim C's testimony and Victim D's testimony are offered for multiple proper purposes; they are relevant; their probative value is not outweighed by their prejudicial effect; and the government is not opposed to limiting instructions. Therefore, although the testimony of

---

[127] Government's Opposition at 12.

[128] *Id.* at 13.

[129] Vafeades's Reply at 4–5.

[130] *See* Part II(B)(3), *supra*.

[131] Government's Opposition at 12–13.

Victims C and D was already deemed admissible under Rule 413, that testimony is also admissible under Rule 404(b).

## IV.    Conclusion

The testimony of Victims C, D, E, and F is admissible under Federal Rule of Evidence 413. Furthermore, although already admissible, the testimony of Victims C and D is also admissible under Federal Rule of Evidence 404(b)(2).

## ORDER

For the foregoing reasons, the Motion in Limine[132] is DENIED.

Signed December 18, 2015.

BY THE COURT

David Nuffer
United States District Judge

---

[132] Defendant's Response to United States' Notice of Intent to Introduce Evidence Pursuant to Rules 404(b) and 413, docket no. 100, filed Oct. 22, 2015.